STATE of North Dakota, Plaintiff and Appellant,

v.

Lonnie BJORNSON, Defendant and Appellee.

Cr. No. 940206.

Supreme Court of North Dakota.

May 9, 1995.

Robert P. Bennett, Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

Donald R. Becker, Fargo, for defendant and appellee.

LEVINE, Justice.

The State appeals from a county court order suppressing a statement made by Lonnie Bjornson during questioning by Cass County law enforcement officials. Because there is insufficient competent evidence fairly capable of supporting the trial court's finding of involuntariness, we conclude the trial

court's decision is contrary to the manifest weight of the evidence, and we reverse.

Bjornson was charged with indecent exposure following his confession during interrogation by Cass County law enforcement officials. The trial court suppressed the incriminating statement on the ground it was involuntary, violating Bjornson's due process rights under the United States and North Dakota Constitutions and his statutory rights under NDCC § 29–21–12.1.

■■■ The trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. *State v. Zimmerman,* 529 N.W.2d 171 (N.D.1995); *City of Fargo v. Thompson,* 520 N.W.2d 578 (N.D.1994). That standard of review recognizes the importance of the trial court's opportunity to observe the witnesses and assess their credibility, and we "accord great deference to its decision in suppression matters." *State v. Brown,* 509 N.W.2d 69, 71 (N.D.1993).

The trial court found that on March 24, 1994, Chief Deputy Sheriff Jim Thoreson contacted Lonnie Bjornson, a twenty-year veteran of the Cass County Sheriff's Department, and asked him to come to the sheriff's office at 7:00 p.m. Upon arriving, Bjornson was escorted into Lieutenant Mike Argall's office where he was confronted by both Argall and Thoreson with an allegation that he had indecently exposed himself to a female employee of a local oil company. The door to Argall's office was closed during the discussion. Bjornson was not informed he was the subject of a criminal investigation or advised of his *Miranda* rights. During the interview, which lasted under two hours, Bjornson's co-workers, Argall and Thoreson, also raised allegations of prior incidents of indecent exposure by Bjornson.

Following the interview, both Argall and Thoreson filed written reports describing the interview with Bjornson which were received into evidence at the suppression hearing. Although Thoreson testified he told Bjornson he could not make any deals, neither report mentions this. Thoreson's report, however, indicates that after approximately fifty minutes of questioning, Thoreson told Bjornson "that if he were not honest with me and den[ied] involvement that it was my intention to utilize the North Dakota Bureau of Criminal Investigation to provide an agent to do a follow-up investigation and refer the matter to the State's Attorney's office for criminal prosecution." Shortly after Thoreson's statement, Bjornson admitted he had indecently exposed himself.

The trial court suppressed Bjornson's subsequent confession, under NDCC § 29–21–12.1, finding Thoreson's statement was an implicit threat to prosecute Bjornson if he did not confess, and a promise not to prosecute if he did confess.

■■■ Section 29–21–12.1, NDCC, makes "[a]ny statement, admission, or confession procured from any person charged with crime in a state court, which was obtained by duress, fraud, threat, or promises" inadmissible as evidence against the person in a criminal action.[1] Under the plain language of the statute, Bjornson bears the burden of proving his statement was induced or obtained as a result of a threat, promise, duress, or fraud. *Matter of Contempt of Grajedas,* 515 N.W.2d 444, 452 (N.D.1994). Bjornson must show some "connection or nexus" between the alleged threat or promise and the statement he seeks to suppress. *State v. Austin,* 520 N.W.2d 564, 569 (N.D.1994).

The State contends Thoreson's uncontradicted testimony that he told Bjornson six times during the interview he could not make any deals establishes Bjornson's admission was not the result of a threat or promise. However, the trial court apparently found that testimony incredible, a finding we will not disturb. *Brown,* 509 N.W.2d at 72.

■■■ The State argues that the evidence does not support the trial court's finding that

---

1. Section 29–21–12.1, NDCC, was repealed during the Fifty-fourth Legislative Assembly. 1995 NDSL ch. — § — (introduced as S.B. 2346).

Thoreson's statement regarding possible future investigation and prosecution was an implied promise or an implied threat. Bjornson did not testify at the suppression hearing, although he could have done so without risking his constitutional right not to incriminate himself. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Gravatt,* 868 F.2d 585 (3d Cir.1989); *United States v. Inmon,* 568 F.2d 326 (3d Cir.1977). We agree Bjornson did not carry his burden of showing his confession was obtained or induced by Thoreson's statement.

Bjornson, a seasoned law enforcement officer, did not testify that he believed Deputy Thoreson was threatening to prosecute him if he did not confess and promising not to prosecute him if he did confess. Although there may be cases in which evidence of threat, promise, fraud, or duress is so clear, it requires no testimony of the defendant to conclude a confession was induced in violation of the statute, this is not such a case. Bjornson simply did not show either that anyone promised not to prosecute him or that, even if he believed such a promise were made, he confessed because of it. Correlation is not synonymous with causation. Bjornson did not show a sufficient nexus or connection between the alleged threat or promise and his confession. *Austin,* 520 N.W.2d 564. On this record, there is insufficient competent evidence fairly capable of supporting the trial court's determination that Bjornson's confession was induced or obtained in violation of NDCC § 29–21–12.1, and the trial court's decision is, therefore, against the manifest weight of the evidence. *See State v. Murray,* 510 N.W.2d 107, 112 (N.D.1994).

█ The trial court also found Bjornson's confession was obtained in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Art. I § 12 of the North Dakota Constitution.

█ When a confession is challenged on due process grounds, the ultimate inquiry is whether the defendant's confession was voluntary.[2] *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). *See also Murray,* 510 N.W.2d 107, "A confession is voluntary if it is the product of the defendant's free choice, rather than the product of coercion." *State v. Pickar,* 453 N.W.2d 783, 785 (N.D.1990). A confession is the product of coercion if the defendant's will is overborne when the confession is given. *Murray,* 510 N.W.2d at 111.

█ Generally, we determine the voluntariness of a confession by examining the totality of circumstances, focusing on: (1) the characteristics and condition of the accused at the time of the confession, and (2) the details of the setting in which the confession was obtained. *Id.; State v. Discoe,* 334 N.W.2d 466, 467–68 (N.D.1983). "Among the relevant factors related to the characteristics of the accused are the age, sex and race of the suspect, his or her education level, physical or mental condition and prior experience with the police." *Pickar,* 453 N.W.2d at 785. *See* W. LaFave & J. Israel, 1 Criminal Procedure § 6.2(c), at 448–49 (1984). In some cases, however, the police conduct may be so inherently coercive that suppression of the confession is the only means to deter future misconduct, and the individual characteristics of the accused are of less importance. La-Fave & Israel, *supra. See Murray,* 510 N.W.2d at 113 (Levine, J., concurring).

The trial court's only findings on Bjornson's characteristics were that he had twenty years' experience in law enforcement as a Cass County Deputy Sheriff and a criminal justice degree from North Dakota State University. There was no finding Bjornson was suffering from a physical or mental condition at the time of questioning, making him susceptible to coercive tactics. *Pickar,* 453 N.W.2d at 785–86. He was not found to be immature or uneducated. *See, e.g., State v. Taillon,* 470 N.W.2d 226, 228 (N.D.1991).

---

2. A suspect in custody who has not received *Miranda* warnings may also challenge the voluntariness of a subsequent confession on self-incrimination grounds. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*See, e.g., State v. Newnam,* 409 N.W.2d 79, 82 (N.D.1987). *See also* 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 6.5 at 479 (1984).

There was no finding he was deprived of food or sleep. *E.g., Discoe,* 334 N.W.2d at 469. The absence of such findings is, of course, due to the absence of any evidence to support them. In sum, there is no evidence that shows Bjornson's will was overborne by Thoreson's questioning. *See, e.g., State v. Larson,* 343 N.W.2d 361 (N.D.1984).

Nor do the trial court's findings on the setting of Bjornson's questioning support its finding of involuntariness. The questioning lasted under two hours. After about an hour of questioning, Bjornson was permitted to use the bathroom, and was given a can of soda. Bjornson was not in custody, and the officers testified that he was free to leave at any time. Bjornson knew and had worked with both Thoreson and Argall in the Cass County Sheriff's office. None of the traditional indicia of coercive police conduct are apparent in the record. *Pickar,* 453 N.W.2d at 896; *State v. Newnam,* 409 N.W.2d 79, 85 (N.D.1987). *See Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987); *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

In short, the trial court's finding of involuntariness is supported only by its inference of an implied threat to prosecute if Bjornson did not confess, and an implied promise not to prosecute if he did confess. While promises implying leniency and threats of prosecution are part of the totality of the circumstances to be weighed by the trial court, *see Pickar,* 453 N.W.2d at 787, generally, an implied threat of prosecution or promise of leniency by police, without more, is insufficiently coercive to render a confession involuntary. *See United States v. Mizyed,* 927 F.2d 979, 982 (7th Cir.1991), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2065, 114 L.Ed.2d 470 (1991); *United States v. Harris,* 914 F.2d 927, 933 (7th Cir.1990); *United States v. Meirovitz,* 918 F.2d 1376, 1379 (8th Cir.1990), *cert. denied* 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 71 (1991); *United States v. Willard,* 919 F.2d 606, 608 (9th Cir.1990), *cert. denied,* 502 U.S. 872, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991). Nor do we think Thoreson's statement that he would conduct a follow-up investigation if Bjornson "were not honest" was inherently coercive. *See Larson,* 343 N.W.2d at 365; *State v. Lange,* 255 N.W.2d 59 (N.D.1977). LaFave & Israel, *supra.* On this record there is insufficient competent evidence fairly capable of supporting the trial court's findings of involuntariness and the trial court's decision to suppress Bjornson's confession is against the manifest weight of the evidence.

Reversed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.