VandeWalle, Chief Justice.
*699 [¶ 1] Steven Wayne Sauter appealed from a judgment entered upon a conditional guilty plea to criminal vehicular homicide, reserving his right to appeal the denial of his motion to suppress the results of a warrantless blood-alcohol test. Sauter argues there was not sufficient evidence to support the district court's decision that exigent circumstances permitted the warrantless blood-alcohol test. We conclude the warrantless blood-alcohol test was authorized under the exigent circumstances exception to the warrant requirement. We affirm the judgment.
I
[¶ 2] On August 31, 2016, around 10:55 p.m., a fatal motor vehicle crash occurred in Barnes County, North Dakota. Highway Patrol Officer Paul Sova arrived at the scene at approximately 11:19 p.m. Officer Sova learned the driver of one of the vehicles was deceased. He also learned that the driver of the other vehicle, Sauter, had suffered life-threatening injuries, was in and out of consciousness, and that a "life-flight" was on its way to the scene. Officer Sova was unable to personally observe Sauter because he was receiving medical attention in the ambulance.
[¶ 3] Officer Sova marked the accident scene for forensic analysis, took pictures, interviewed witnesses, and made various phone calls. Officer Sova contacted his supervisor, Sgt. Matthew Denault, at midnight. Officer Sova informed Sgt. Denault that Sauter was going to be life-flighted to Fargo. Officer Sova requested Sgt. Denault go to the hospital in Fargo to continue the investigation. Officer Sova went to notify the family of the death.
[¶ 4] When Sgt. Denault arrived at Sanford Hospital, Sauter was not in his room. Based on the information provided by Officer Sova, Sgt. Denault knew alcohol may be a factor, but wanted to further investigate the matter before he applied for a search warrant to obtain a blood test. Sauter was returned to his room approximately 20 minutes after Sgt. Denault arrived. Sauter was intubated, unconscious, and non-responsive. Sgt. Denault detected an odor of alcohol coming from Sauter and decided to apply for a search warrant to obtain a blood test.
[¶ 5] Sgt. Denault called the "on-call" Cass County State's Attorney, Cherie Clark, at 1:39 a.m. Clark advised that Sgt. Denault call the jail to find out which judge was "on-call." Sgt. Denault then called the jail and was told to call the Cass County State's Attorney. Instead, Sgt. Denault called dispatch, but was informed they did not have access to the judge's phone numbers. He was then transferred to the Fargo Police Department. Sgt. Shane Aberle told him that the "on-call" investigator could assist him. Sgt. Denault was waiting for the investigator to call him back when he learned Sauter was being prepped for surgery. Due to the extent of Sauter's injuries, Sgt. Denault was concerned Sauter could be in surgery for a lengthy period of time and that the alcohol, if any, in his system would dissipate. Sgt. Denault asked a nurse to do a blood draw and placed Sauter under arrest for driving under the influence at 2:51 a.m. The blood draw was done at 2:59 a.m.
[¶ 6] Sauter was charged with a class A felony criminal vehicular homicide. Sauter *700 moved to suppress evidence based on the warrantless search and seizure of his blood. The district court denied the motion because the search was constitutional based upon exigent circumstances.
II
[¶ 7] The standard of review of motions to suppress evidence is well-established:
We give deference to the district court's findings of fact when reviewing a motion to suppress evidence. The district court is in a superior position to assess the credibility of witnesses and weigh the evidence, and conflicts are resolved in favor of affirmance. A district court's findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence. Matters of law are fully reviewable by this Court on appeal.
State v. Morales , 2015 ND 230, ¶ 7, 869 N.W.2d 417.
III
[¶ 8] "Unreasonable searches and seizures are prohibited by the Fourth Amendment of the United States Constitution, made applicable to the states under the Fourteenth Amendment, and by Article I, Section 8, of the North Dakota Constitution." Morales , 2015 ND 230, ¶ 8, 869 N.W.2d 417. "The administration of a blood test to determine blood-alcohol concentration is a search under those constitutional provisions." Id. "Warrantless searches are unreasonable unless they fall within one of the recognized exceptions to the warrant requirement." Id.
[¶ 9] "In suppression cases, the defendant has the initial burden of establishing a prima facie case that the evidence was illegally seized." Id. (citing State v. Glaesman , 545 N.W.2d 178, 182 n.1 (N.D. 1996) ). "Thereafter, the burden shifts to the State to prove a warrantless search falls within a recognized exception to the warrant requirement." Morales , 2015 ND 230, ¶ 8, 869 N.W.2d 417. "Absent an exception to the warrant requirement, the exclusionary rule requires suppression of evidence obtained in violation of the federal and state constitutions' protections against warrantless searches or seizures." Id.
[¶ 10] Exigent circumstances is a recognized exception to the warrant requirement. Id. See N.D.C.C. § 39-20-01.1(3) (providing in the absence of consent or exigent circumstances, law enforcement shall request a search warrant to obtain tests of a driver's blood, breath, or urine to determine the alcohol concentration or presence of other substances). An "exigent circumstance" is "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." Morales , 2015 ND 230, ¶ 10, 869 N.W.2d 417 (citations omitted). The Supreme Court of the United States has explained exigent circumstances as:
A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement's need to provide emergency assistance to an occupant of a home, engage in "hot pursuit" of a fleeing suspect, or enter a burning building to put out a fire and investigate its cause. As is relevant here, we have also recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence. While these contexts do not necessarily involve equivalent dangers, in each a warrantless *701 search is potentially reasonable because "there is compelling need for official action and no time to secure a warrant."
To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances.
Missouri v. McNeely , 569 U.S. 141, 149, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (citations omitted). The natural dissipation of alcohol in a driver's bloodstream may support a finding of exigency in a specific case; however, it does not do so categorically. See id. at 156, 133 S.Ct. 1552 (recognizing exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process); see also Schmerber v. California , 384 U.S. 757, 770-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (recognizing where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to obtain a warrant, and, therefore, the officer's attempt to secure evidence of petitioner's blood alcohol content was appropriate).
[¶ 11] We recently addressed a similar situation in State v. Morales , affirming the district court's finding of exigent circumstances justifying a warrantless blood draw. Morales , 2015 ND 230, ¶¶ 14-17, 869 N.W.2d 417. In Morales , a city police officer responded to the scene of a fatal single-car accident. The police officer did not talk to Morales (the driver) because he was receiving medical attention; however, he was close enough to detect the odor of alcohol coming from Morales. Id. at ¶ 2. When the North Dakota Highway Patrol arrived at the scene, Morales had already been transported to the hospital. Id. at ¶ 3. The patrol officer was informed that Morales had received medical care, been taken to the hospital, and that the responding police officer had said Morales smelled of alcohol. Id. The police officer returned to his patrol duties, but was later dispatched to watch Morales at the hospital. Id.
[¶ 12] The patrol officer remained at the accident scene for approximately an hour and a half to conduct the accident investigation. Id. at ¶ 4. The investigation revealed Morales' vehicle was traveling at a high rate of speed and failed to negotiate a turn or brake that resulted in a collision with a trailer. Id. at ¶ 14. After conducting the investigation, the patrol officer went to the hospital. Id. at ¶ 4. When the patrol officer arrived, Morales was intubated and unconscious. Id. The patrol officer smelled alcohol coming from Morales, placed him under arrest, and requested a warrantless blood draw. Id. Morales was charged with causing death while operating a vehicle under the influence of alcohol. Morales moved to suppress the evidence. Id. at ¶ 5. The district court dismissed the motion, ruling exigent circumstances justified the warrantless blood draw. Id.
[¶ 13] We affirmed the district court's ruling on exigent circumstances, highlighting circumstances including: it was not a routine drunk driving accident because of the fatality; law enforcement was understaffed due to a holiday; Morales had to be transported for medical attention before he could be questioned by law enforcement; after the patrol officer finished his investigation, he proceeded to the hospital where he observed an unconscious and unresponsive Morales who smelled of alcohol; the patrol officer was concerned about the two-hour window for chemical testing and the availability of getting a warrant on a holiday; and the police officer watching Morales at the hospital was unaware of the patrol officer's investigation results. Id. at ¶¶ 14-15.
*702 [¶ 14] Sauter argues this case is distinguishable from Morales and there was no explanation for the delay in seeking a warrant. We disagree.
[¶ 15] Considering the specific facts of this case, we conclude the district court's ruling on exigent circumstances is supported by sufficient competent evidence and is not against the manifest weight of the evidence.
[¶ 16] Here, law enforcement responded to and investigated a fatal car accident. Officer Sova was informed from a first responder that Sauter smelled of alcohol following the accident. However, Officer Sova was unable to get close enough to Sauter to personally observe him because Sauter was receiving life-saving medical treatment at the scene of the accident. Officer Sova continued to perform his patrol duties, including on-scene investigation, for nearly two hours. During this time, Officer Sova contacted his supervisor, Sgt. Denault, who was located in the area Sauter was being taken for medical treatment. Officer Sova informed Sgt. Denault there was suspected alcohol involved, but that he did not have any personal knowledge. After receiving this information, Sgt. Denault went to the hospital to continue the investigation of Sauter. Once at the hospital, Sgt. Denault waited approximately 20 minutes for Sauter to be returned to his room. At this point, Sauter was intubated and unconscious but smelled of alcohol. Sgt. Denault then attempted to obtain a warrant for over an hour. While Sgt. Denault was attempting to obtain a warrant, he was informed Sauter was being prepped for surgery. Sgt. Denault became concerned about losing the blood test due to the span of time from when the accident occurred to when Sauter would potentially get out of surgery. Sgt. Denault placed Sauter under arrest and asked a nurse to do a blood draw.
[¶ 17] Deliberation away from the demands and pressing needs of the scene may lead one to conclude there were moments in which the officer could, as Sauter contends, have applied for a warrant. But, we believe the opportunity and necessity to do so should be determined by the circumstances of the moment, rather than from a calm retrospective view allowed by hindsight.
[¶ 18] The district court's ruling is supported by sufficient competent evidence in the record and is not against the manifest weight of the evidence.
IV
[¶ 19] We affirm the judgment.
[¶ 20] Gerald W. VandeWalle, C.J.
Jon J. Jensen
Lisa Fair McEvers
Dale V. Sandstrom, S.J.
Daniel J. Crothers
[¶ 21] The Honorable Dale V. Sandstrom, S.J., sitting in place of Tufte, J., disqualified.